# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

ROBIN VAN ERT,
      Plaintiff,

v.                                                     Case No. 16-C-770

REBECCA BLANK et al.,
      Defendants.

## DECISION AND ORDER

In 2014, Robin Van Ert ended a romantic relationship with Bo Ryan, then the head coach of the Wisconsin Badgers men's basketball team at the University of Wisconsin–Madison (UW). In February 2015, Van Ert emailed UW Chancellor Rebecca Blank and several athletic department officials expressing concerns about Ryan. Among other things, Van Ert wrote that Ryan is "manipulative," "a liar," a "cheater," and "deceptive" and that he "should not be coaching and mentoring or be a role model to the young men on the basketball team." *See* Docket No. 9-1, at 1.

Van Ert alleges that, in the months that followed, defendants, all UW officials, conducted a "sham" investigation of her complaint against Ryan and then released her email and name to the media, which led to threats, harassment, and ridicule. Van Ert brings this action under 42 U.S.C. § 1983 alleging federal constitutional deprivations under the First and Fourteenth Amendments. She also brings supplemental state-law claims for invasion of privacy, negligence, defamation, and conspiracy. Defendants move to dismiss Van Ert's complaint under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss pursuant to . . . Rule . . . 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted."

*Camasta v. Jos. A. Bank Clothiers Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). To survive a Rule 12(b)(6) motion, "a complaint must allege 'sufficient factual matter to state a claim to relief that is plausible on its face.'" *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (quoting *Gogos v. AMS Mech. Sys. Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## I. FEDERAL CLAIMS

To state a § 1983 claim for a constitutional deprivation, "a plaintiff must allege that . . . [s]he was deprived of a right secured by the Constitution . . . of the United States . . . by a person or persons acting under color of state law." *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Defendants do not dispute that they were acting under color of state law, so I need only consider whether Van Ert plausibly alleges that they violated her federal constitutional rights. I consider each federal constitutional right that she asserts in turn.

### A. Due Process

Van Ert argues that defendants violated her Fourteenth Amendment right to due process. To state a cognizable due process claim, she must allege that "the government "deprived [her] of a constitutionally protected liberty or property interest without due process of law." *Roake v. Forest Preserve District of Cook County*, 849 F.3d 342, 347 (7th Cir. 2017) (quoting *Hinkle v. White*, 793 F.3d 764, 767 (7th Cir. 2015)).

Van Ert argues that defendants deprived her of a "valid interest in her reputation," requiring her to close her business, relocate, and change professions. *See* Pl.'s Br.,

2

ECF No. 11, at 15, 17. But an individual's "interest in [her] reputation . . . is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." *Paul v. Davis*, 424 U.S. 693, 712 (1976). Thus, without more, Van Ert's interest in her reputation is not enough to support a cognizable due process claim.

A plaintiff may state a due process claim based on reputational harm, but only if she can plausibly allege that, "as a result of the state action complained of, a right or status previously recognized by state law was distinctly altered or extinguished." *Id.* at 711. For example, if the government fires a public employee (a distinct change in status); the "circumstances of the discharge . . . [are] publically stated"; and "the employee's good name, reputation, honor or integrity . . . [are] called into question in a manner that makes it virtually impossible for the employee to find new employment in his chosen field," the employee has been deprived of "a liberty interest in pursuing the occupation of his choice." *Townsend v. Vallas*, 256 F.3d 661, 669–70 (7th Cir. 2001).

Van Ert does not identify any change in status or any right under state law that she lost due to defendants' alleged conduct. Instead, she simply argues that defendants denied her procedural protections provided by Wisconsin's public records law when they failed to give her notice and an opportunity to seek a court order preventing disclosure before they released her email and name to the media. *See* Wis. Stat. § 19.356(3). Even if Van Ert was entitled to such process, "a failure to follow state statutes or state-mandated procedures does not amount to a federal due process claim of constitutional magnitude." *Dietchweiler ex rel. Dietchweiler v. Lucas*, 827 F.3d 622, 629 (7th Cir. 2016). Thus, the complaint fails to state a cognizable due process claim.

## B. Privacy

Van Ert next alleges that defendants violated her constitutional right to privacy. As a matter of substantive due process, the Fourteenth Amendment protects "at least two different kinds of [privacy] interests." *Whalen v. Roe*, 429 U.S. 589, 599 (1977). One such interest is "in independence in making certain kinds of important decisions." *Id.* at 599–600. The Fourteenth Amendment protects this interest by limiting "the States' power to substantively regulate conduct" in certain areas, such as "marriage, procreation, contraception, family relationships, and child rearing and education." *Paul*, 424 U.S. at 713. Van Ert does not "challenge . . . the State's ability to restrict [her] freedom of action in a sphere contended to be 'private,'" *id.*, or otherwise argue that defendants' alleged conduct impaired her "interest in making important decisions independently," *Whalen*, 429 U.S. at 600, so she fails to state a substantive due process claim based on this privacy interest.

The second privacy interest protected by the Fourteenth Amendment is "in avoiding disclosure of personal matters." *Whalen*, 429 U.S. at 599. Though this interest reflects a broad "right to be let alone," *id.* at 599 n.25 (quoting *Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting)), courts usually recognize it in more specific forms, such as "a 'qualified' constitutional right to the confidentiality of medical records and communications." *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 566 (7th Cir. 2009); *see also, e.g.*, *Denius v. Dunlap*, 209 F.3d 944, 958 (7th Cir. 2000) (noting that "a measure of protection under the federal constitutional right of privacy" applies to "some types of financial information"). Van Ert argues that

defendants deprived her of her right to privacy "by identifying her when disclosing her personal private matters to the public." Pl.'s Br., ECF No. 11, at 18.

"[T]he scope and contours of this right have not been defined in this Circuit," but courts generally discuss "the existence and extent of constitutional protection for confidential information in terms of the type of information involved and the reasonable expectation that that information would remain confidential." *Denius*, 209 F.3d at 955–57 (noting that "medical information may be a form of protected confidential information because of its intimate and personal nature"). Depending on the circumstances, other factors may also be relevant, including but not limited to the public interest in the information, *Nixon v. Administrator of General Services*, 433 U.S. 425, 465 (1977); whether the government "condition[ed] continued employment on the disclosure of private information," *Pesce v. J. Sterling Morton High Sch.*, 830 F.2d 789, 797 (7th Cir. 1987)); *see also NASA v. Nelson*, 562 U.S. 134, 147 (2011); and whether government officials obtained private information only by offering "assurances of confidentiality," *cf. U.S. Dep't of State v. Ray*, 502 U.S. 164, 172 (1991) (discussing disclosure of information in records subject to a Freedom of Information Act request). *See Denius*, 209 F.3d at 956 & n.7 (collecting cases and listing relevant factors).

While Van Ert's email contains intimate and personal information about her and her relationship with Ryan, the type of information involved is also of great public interest. In Wisconsin, "the public has an interest in knowing about . . . allegations of . . . misconduct" by "public employees," especially where, as here, the public employee at issue was "in a significant position of responsibility and visibility." *Zellner v. Cedarburg Sch. Dist.*, 2007 WI 53, ¶ 53, 300 Wis. 2d 290, 317, 731 N.W.2d 240, 253 ("All officers

and employees of government are, ultimately, responsible to the citizens, and those citizens have a right to hold their employees accountable for the job they do." (internal quotation marks omitted) (quoting *Linzmeyer v. Forcey*, 2002 WI 84, ¶ 28, 254 Wis. 2d 306, 326–27, 646 N.W.2d 811, 819)).

Under the circumstances, Van Ert's identity is also of significant public interest. In Wisconsin, "the public has a strong interest" in knowing who is "attempting to influence public policy." *John K. MacIver Inst. for Pub. Policy, Inc. v. Erpenbach*, 2014 WI App 49, ¶ 21, 354 Wis. 2d 61, 77, 848 N.W.2d 862, 869–70. Van Ert alleges that, in her email, she asked defendants to "investigate and take appropriate action" to prevent Ryan "and others in similar positions . . . working for and representing the University of Wisconsin" from being "abusive towards women," having "a negative impact on student athletes," violating university and NCAA rules, and breaching a "morality clause" in his employment contract. Compl., ECF No. 1, ¶ 18. In other words, Van Ert sent her February 2015 email in order to influence the conduct and views of high-level public officials on matters of university administrative and employment policy, procedure, and oversight, which makes her identity, as well as the contents of her email, information "to which great public interest attached." *See Nixon*, 433 U.S. at 456.

Further, nothing in the complaint suggests that Van Ert had an expectation, much less a reasonable one, that the information in her email, including her identity, would remain confidential. "In this day and age, it would be unreasonable for a person sending an email to [public officials] in an attempt to influence public policy to believe that the email and all the information therein might not be seen by persons other than just the [the officials]." *Erpenbach*, 2014 WI App 49, ¶ 28. "If a citizen has a genuine concern

6

about his or her views becoming public, he or she need not express such views through means which create a public record." *See id.* ¶¶ 30–31 ("The issue . . . [is] the medium of communication utilized; and nothing . . . prevents citizens from sharing their views with public officials via phone or in-person communication . . . without necessarily creating a public record . . . ."). Van Ert chose to send an email, "a method of communication that transmits the identifying account of the sender" while creating a public record, and she "made [her] identity plain and easily-identifiable by including [her] name within [her] message[]." *Id.* ¶ 28. She could not have reasonably expected her identity or the contents of her email to remain confidential.

Finally, even if Van Ert expected confidentiality, she did not "demonstrate that [she] sought to preserve the contents of [her email] as private." *Cf. United States v. Yang*, 478 F.3d 832, 835 (7th Cir. 2007) (noting that "an individual claiming a subjective expectation of privacy" for Fourth Amendment purposes "must exhibit that expectation"). Nothing in the complaint suggests that Van Ert acted as though she expected confidentiality. To the contrary, one of the last things she wrote in her email was, "I have nothing to hide." *See* Docket No. 9-1, at 2.

Van Ert alleges that, in December 2015, her attorneys informed defendants that her email was confidential and asked them to provide notice prior to disclosure of its contents to the public. *See* Compl., ECF No. 1, ¶ 26. But more than 10 months passed between Van Ert's seemingly unconditional, not to mention unsolicited, disclosure of information to public officials and her unilateral assertion of confidentiality. During that time, she apparently "took no affirmative steps to demonstrate any expectation of

privacy in [the contents of her email]." *See Yang*, 478 F.3d at 835. I simply cannot reasonably infer from the facts as alleged that she had an expectation of confidentiality.

Viewing the alleged facts in light of the relevant factors discussed above, the only justifiable inference that I can draw is that defendants disclosed information of significant public interest in which Van Ert had no reasonable expectation of privacy or confidentiality. Therefore, I agree with defendants that the complaint fails to state a cognizable constitutional claim that they violated Van Ert's interest in avoiding public disclosure of personal matters. *See Chasensky v. Walker*, 740 F.3d 1088, 1096 (7th Cir. 2014); *see also Malleus v. George*, 641 F.3d 560 (3d Cir. 2011).

### C. Free Speech

Van Ert further alleges that defendants violated her First Amendment right to free speech by retaliating against her for "speaking out" against Ryan. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006). Specifically, she argues that "[d]efendants punished her . . . by disclosing her name to the media in violation of public records laws and inferring [sic] that her complaint was without merit," and that, as a result, "[o]ther victims of abuse and mistreatment by high-ranking UW officials will think twice before reporting it to [d]efendants for fear of being treated like Van Ert." *See* Pl.'s Br., ECF No. 11, at 20.

Normally, to state a First Amendment retaliation claim, a plaintiff must plausibly allege that "she suffered a deprivation that would likely deter First Amendment activity," *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017), but where, as here, "the alleged retaliatory action is in itself speech," the court must consider the defendant's right to free speech, as well as the plaintiff's, *Hutchins v. Clarke*, 661 F.3d 947, 956 (7th Cir. 2011). To be actionable under § 1983, "[r]etaliatory speech" by a public official must either

8

constitute a "threat, coercion, or intimidation that punishment, sanction, or adverse regulatory action w[ill] immediately follow" or involve "the release of 'highly personal and extremely humiliating details' to the public." *Novoselsky v. Brown*, 822 F.3d 342, 356 (7th Cir. 2016) (quoting *Hutchins*, 661 F.3d at 956–57).

Even if defendants did retaliate against Van Ert because of her constitutionally protected activities, implying that her complaints against Ryan lacked merit hardly "rise[s] to the level of threat, coercion, intimidation, or profound humiliation," and her name is clearly not the sort of "highly personal and extremely humiliating detail[]" that gives rise to a constitutional retaliation claim if publicly released, even for retaliatory reasons. *See Hutchins*, 661 F.3d at 957 (discussing *Bloch v. Ribar*, 156 F.3d 673, 679–80 (6th Cir. 1998)). Therefore, the complaint fails to state a constitutional claim for retaliation actionable under § 1983.

**D. Equal Protection**

Van Ert's final asserted claim under § 1983 is that defendants deprived her of her Fourteenth Amendment right to equal protection. "The Equal Protection Clause guards against government discrimination on the basis of race and other immutable characteristics, but it also extends to protect people from so-called 'class-of-one' discrimination in which a government arbitrarily and irrationally singles out one person for poor treatment." *Brunson v. Murray*, 843 F.3d 698, 705 (7th Cir. 2016).

Van Ert primarily asserts a class-of-one claim. "To state an equal protection claim on a class-of-one theory, a plaintiff must allege that [she] has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the

9

difference in treatment.'" *Forgue v. City of Chicago*, 873 F.3d 962, 968 (7th Cir. 2017) (quoting *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601–02 (2008)).

In most class-of-one cases, "courts look to the treatment of similarly situated individuals . . . . to infer animus." *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013). "[I]f all principal characteristics of . . . two individuals are the same, and one received more favorable treatment, this may show there was no proper motivation for the disparate treatment." *Id.* Van Ert does not identify any similarly situated individuals (commonly called "comparators") or allege any facts about defendants' treatment of anyone other than herself, but that is not necessarily fatal to her class-of-one-claim.

Where "similarly situated individuals are difficult to find" or the plaintiff does not "identify any," courts instead look to the "pattern of the defendant's conduct toward the plaintiff." *Brunson*, 843 F.3d at 706–07 (quoting *Swanson*, 719 F.3d at 784). "[I]f the allegations signal that the plaintiff alone suffered the defendant's harassment, there is no need to identify a comparator." *Id.* at 707. Here, "the alleged facts" do not "clearly suggest harassment by public officials that has no conceivable legitimate purpose." *See Geinosky v. City of Chicago*, 675 F.3d 743, 748–49 (7th Cir. 2012) (inferring improper disparate treatment from an "extraordinary pattern" of "baseless [parking] tickets that were highly unlikely to have been a product of random mistakes").

The factual allegations in the complaint, even when viewed in the light most favorable to Van Ert, clearly suggest "a rational and proper purpose" for everything that defendants allegedly did. *See id.* at 749. For instance, the alleged facts suggest that defendants released Van Ert's email and name to the public not out of spite or malice but in response to public records requests and media inquiries after determining in good

faith that it was both lawful and proper to disclose that information. Even if defendants violated state law by denying Van Ert notice and an opportunity to contest disclosure, the facts as alleged do not plausibly suggest anything worse than incompetence or poor judgment on their part. "[O]rdinary and inevitable mistakes by government officials" do not constitute "actionable, deliberate discrimination." *See id.* at 747–48.

The alleged facts do not preclude the possibility that defendants singled Van Ert out for poor treatment, but "a sheer possibility that a defendant has acted unlawfully" is not enough. *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557). Here, the complaint fails to state a facially plausible (and thus cognizable) class-of-one claim.

Van Ert alleges, in the alternative, that defendants denied her equal protection as "a member of a class of private citizens who have reported employee misconduct to the University of Wisconsin." Compl., ECF No. 1, ¶ 64. Although Van Ert is probably not the only private citizen who has ever reported employee misconduct to UW, her complaint does not allege any facts about anyone else who ever has, nor does it allege that those individuals were treated differently from anyone else, much less that they were intentionally and irrationally classified or targeted for abuse by government officials. The complaint's conclusory allegations about this "class" are insufficient to state a cognizable equal protection claim.

## II. SUPPLEMENTAL STATE-LAW CLAIMS

As discussed above, Van Ert's complaint fails to state a cognizable claim for relief under federal law, so I must dismiss her federal claims. "When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims, which the plaintiff can then prosecute in state court." *Al's Service Center v. BP Products North America, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) (citations omitted) (citing 28 U.S.C. § 1367(c)(3); *Beck v. Dobrowski*, 559 F.3d 680, 686 (7th Cir.2009)); *see also RWJ Management Co., Inc. v. BP Products North America, Inc.*, 672 F.3d 476, 479 (7th Cir. 2012). I see no reason to abandon that presumption here. Accordingly, after dismissing Van Ert's federal claims, I will relinquish jurisdiction over her remaining, state-law claims.

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendants' motion to dismiss (ECF No. 8) is **GRANTED** with respect to plaintiff's federal claims and otherwise **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's federal claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1367(c)(3), the court's supplemental jurisdiction over plaintiff's state-law claims is **RELINQUISHED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter final judgment consistent with this order and close this case.

Dated at Milwaukee, Wisconsin, this 26th day of January, 2018.

/s Lynn Adelman
LYNN ADELMAN
District Judge