# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

---

**ROBIN VAN ERT,**
      **Plaintiff,**

v.                                                                                          **Case No. 16-C-0770**

**REBECCA M. BLANK et al.,**
      **Defendants.**

---

## ORDER

      Robin Van Ert brought this action under 42 U.S.C. § 1983 and state tort law against various University of Wisconsin–Madison officials alleging violations of her First and Fourteenth Amendment rights, invasion of privacy, negligence, defamation, and conspiracy. Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. I found that the complaint failed to state a cognizable claim to relief under federal law and granted defendants' motion with respect to Van Ert's federal claims. Pursuant to 28 U.S.C. § 1367(c)(3), I declined to exercise supplemental jurisdiction over Van Ert's state-law claims. The Clerk of Court entered final judgment and closed the case.

      Van Ert moves under Rule 59(e) for reconsideration of my order dismissing her federal claims. Rule 59(e) does not list specific grounds for reconsideration, so district courts "enjoy[] considerable discretion in granting or denying" relief under that rule. 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2810.1 (3d ed.), Westlaw (updated Apr. 2018). Still, reconsideration after the entry of a judgment "is an extraordinary remedy which should be used sparingly." *Id.* Before considering whether

Van Ert has shown that such a remedy is warranted here, I briefly revisit the allegations in her complaint and the bases for my prior order dismissing her federal claims.

## I. BACKGROUND

Van Ert's complaint alleges, in relevant part, as follows: "Between 2009 and 2014, VAN ERT had a private, consensual, romantic relationship with a former head coach of a University of Wisconsin varsity sport." Compl., ECF No. 1, ¶ 13.

> VAN ERT ended her relationship with the COACH in 2014 in part because of her belief that the COACH was manipulative, deceptive, and abusive toward VAN ERT and other women. In VAN ERT's opinion, the COACH was unfit to coach and mentor young student athletes and conducted himself in a manner contrary to the best interests of student athletes and the University of Wisconsin.

*Id.* ¶ 17.

"On February 11, 2015, VAN ERT reported the relationship and the COACH's inappropriate behavior to" the Chancellor of the University of Wisconsin–Madison, Rebecca Blank; Deputy Athletic Director Walter Dickey; and Senior Associate Athletic Directors Terry Gawlik and Bruce Van De Velde "via email." *Id.* ¶ 18.

> The e-mail asked BLANK, DICKEY, GAWLIK, and VAN DE VELDE to investigate and take appropriate action to prevent the COACH and others in similar positions at the University of Wisconsin from engaging in conduct while working for and representing the University of Wisconsin that may interfere with job performance, be abusive towards women, have a negative impact on student athletes, as well as violate University of Wisconsin and/or National Collegiate Athletic Association ("NCAA") rules, or violate a "morality clause" contained in the COACH'S contract with the University of Wisconsin.

*Id.*

> On December 22, 2015, VAN ERT, through her attorneys, sent a letter to DICKEY advising him and the other DEFENDANTS that her February 11, 2015, e-mail was confidential, that it should not be released to the public, and requested that DEFENDANTS contact her attorneys before

2

releasing the e-mail and/or disclosing its contents to the public. DICKEY
acknowledged receipt of the December 22, 2015, letter . . . .

*Id.* ¶ 26.

"On March 4, 2016, DICKEY contacted VAN ERT directly . . . and informed her that her February 11, 2015, e-mail was going to be released to the public in response to an open records request." *Id.* ¶ 31. "Within approximately one hour . . . , DEFENDANTS released the e-mail to the media . . . , with only VAN ERT's name and e-mail address redacted." *Id.* ¶ 35. "Later on March 4, 2016, or March 5, 2016, [defendant John Lucas] disclosed VAN ERT's identity to a reporter . . . ." *Id.* ¶ 37.

As noted above, I considered the allegations in Van Ert's complaint and found that they failed to state a cognizable claim to relief under federal law. Specifically, I found that the complaint's well-pleaded factual allegations did not allow me to reasonably infer that defendants violated Van Ert's constitutional right to privacy under the Fourteenth Amendment by disclosing her email and her identity to the press because the information disclosed was of significant public interest and Van Ert could not have had a reasonable expectation of privacy in that information. I also found that the facts as alleged did not plausibly suggest that defendants retaliated against Van Ert in violation of her First Amendment rights or that they arbitrarily and irrationally singled her out for poor treatment in violation of her constitutional right to equal protection.

## II. DISCUSSION

In her motion for reconsideration, Van Ert raises three of the "basic grounds upon which a Rule 59(e) motion may be granted." 11 Wright et al., *supra*, § 2810.1. She argues that reconsideration is "justified by an intervening change in controlling law" and

that it is "necessary to correct manifest errors of law . . . upon which the judgment is based" and "to prevent manifest injustice." *Id.* I consider these bases for relief in turn.

### A. Intervening Change in Controlling Law

First, Van Ert argues that a recent change in state caselaw affects my analysis with respect to her constitutional privacy claims. In my prior order, I noted that "the existence and extent of constitutional protection for confidential information" is often discussed "in terms of the type of information involved and the reasonable expectation that that information would remain confidential." *Denius v. Dunlap*, 209 F.3d 944, 957 (7th Cir. 2000). Based on the complaint's alleged facts, I found that the contents of Van Ert's email and her identity were information "to which great public interest attached." *See Nixon v. Administrator of General Services*, 433 U.S. 425, 455–65 (1977). I also found that she did not demonstrate an expectation of privacy in that information and that, even if she had one, it would not have been reasonable under the circumstances.

In analyzing both "the type of information involved" and Van Ert's "reasonable expectation" of confidentiality, I looked to state caselaw. In particular, I quoted *Zellner v. Cedarburg School District*, 2007 WI 53, 300 Wis. 2d 290, 731 N.W.2d 240, in which the Wisconsin Supreme Court noted that "the public has an interest in knowing about . . . allegations of . . . misconduct" by "public employees." *Id.* ¶ 53. I also quoted *John K. MacIver Institute for Public Policy Inc. v. Erpenbach*, 2014 WI App 49, 354 Wis. 2d 61, 848 N.W.2d 862, in which the Wisconsin Court of Appeals held that "the public has a strong interest" in knowing "who is attempting to influence public policy and why" and agreed with the trial court that "the term 'private' is 'oxymoronic with sending an e-mail to a public official concerning a public matter.'" *Id.* ¶¶ 21, 29.

4

Van Ert argues that my analysis "should change" in light of the Wisconsin Supreme Court's recent decision in *Madison Teachers Inc. v. Scott* (*MTI*), 2018 WI 11, 379 Wis. 2d 439, 906 N.W.2d 436. *MTI*, like *Zellner* and *Erpenbach*, concerns disclosure of information in public records under Wisconsin's open records law. The court in *MTI* considered a "record custodian['s] . . . reasons for not disclosing" records of an "annual certification election for collective bargaining representatives" of school district employees and "whether those reasons outweigh[ed] the public interest in disclosure." *See id.* ¶¶ 4, 16. The court reviewed the custodian's "determination that while this election was ongoing, the public interest that elections remain free from voter intimidation and coercion outweighed the public interest in favor of openness of public records" and found that, in reaching that conclusion, the custodian "lawfully performed" the "balancing test" required under state law. *See id.* ¶¶ 2–3.

*MTI* does not affect my analysis with respect to Van Ert's federal claims. For one thing, *MTI* is not "controlling law." For that matter, neither are *Zellner* and *Erpenbach*, which I cited as persuasive authority because they discuss issues similar to those raised here. That I looked to those cases does not change the fact that federal, not state, law governs federal claims like Van Ert's privacy claims. Further, even if *MTI* were controlling here, it does not displace the reasoning in *Zellner* or *Erpenbach* that I looked to in addressing Van Ert's claims. Indeed, *MTI*'s rationale, ostensibly rooted in concerns about "voter intimidation and coercion," has little, if any, application here.

Van Ert has not shown that *MTI* constitutes an intervening change in controlling law justifying relief under Rule 59(e). Thus, to the extent that she seeks relief on that basis, I will deny her motion for reconsideration.

### B. Manifest Errors of Law

Next, Van Ert argues that, in granting defendants' motion to dismiss under Rule 12(b)(6), I did not "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in [her] favor," as required. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). Instead, she says, I improperly resolved issues of fact and drew unfavorable inferences in dismissing her federal claims. As noted above, I can grant relief under Rule 59(e) to correct "a manifest error of law," including the "misapplication" of "controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

Van Ert is correct that I must assume the veracity of a complaint's well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor on a Rule 12(b)(6) motion to dismiss, though two other principles also apply to such motions:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citations omitted) (final alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). With these principles in mind, I turn to Van Ert's arguments that I committed legal errors in dismissing her federal claims.

### 1. Constitutional Privacy Claims

Van Ert first argues that, in dismissing her constitutional privacy claims, I improperly found that she had no reasonable expectation of privacy in the information defendants disclosed to the press and that the public had an interest in knowing her

6

identity and the details of her romantic relationship. As my prior order makes clear, though, I simply concluded that the complaint's well-pleaded facts do not give rise to a plausible inference that defendants violated Van Ert's constitutional right to privacy. In other words, I applied the proper legal standard to defendants' Rule 12(b)(6) motion with respect to these claims and dismissed them accordingly. Nevertheless, for the sake of clarity, I will restate my prior conclusions as to those claims.

First, given the alleged facts, Van Ert's email and her identity are clearly of public interest. As mentioned above, the public has a legitimate interest in knowing about allegations of misconduct by public employees. It also has "the right to know what the government is doing" and "who is attempting to influence" it. *Erpenbach*, 2014 WI App 49, ¶ 20 (quoting *Milwaukee Journal Sentinel v. City of Milwaukee*, 2012 WI 65, ¶ 4, 341 Wis. 2d 607, 612, 815 N.W.2d 367, 370). Here, the complaint alleges that Van Ert emailed several public officials asking them to investigate a public employee whose "inappropriate behavior" made him, in her opinion, "unfit" for his position and that those officials launched an investigation, as a result. Compl., *supra*, ¶¶ 17–18, 24. An official investigation into accusations of misconduct by a public employee is certainly a matter in which the public has an interest. The public also has an interest in knowing what prompted the investigation, including the original source of the accusations at issue. *See Erpenbach*, 2014 WI App 49, ¶¶ 28–29.

Still, where an individual has a reasonable expectation of privacy in certain information, the public's interest "in access to or dissemination of the information" may be insufficient to overcome the individual's constitutional right to privacy. *See Wolfe v. Schaefer*, 619 F.3d 782, 785 (7th Cir. 2010). That right is implicated (though not

7

necessarily violated) where the government *requires* disclosure of highly personal information, say, by statute, as in *Nixon*, or as a condition of employment, as in *Denius*. It may also be implicated where the government illegally or improperly obtains private materials and exhibits or disseminates them, *see, e.g.*, *Slayton v. Willingham*, 726 F.2d 631, 635 (10th Cir. 1984); *York v. Story*, 324 F.2d 450, 454–56 (9th Cir. 1963), or where "a state official . . . disclose[s] intimate personal information obtained under a pledge of confidentiality," *James v. City of Douglas*, 941 F.2d 1539, 1544 (11th Cir. 1991).

Here, though, given the facts as alleged in the complaint, Van Ert could not have had a reasonable expectation of privacy in the information at issue. For one thing, nothing in the complaint suggests that defendants even *asked* Van Ert for that information, much less that they commanded her to produce it or that they unlawfully or inappropriately obtained it. Further, nothing in the complaint suggests that Van Ert even *sought*, much less that she actually obtained, any assurance of confidentiality before she disclosed that information. To the contrary, the complaint clearly alleges that Van Ert *volunteered* the information to defendants and that she did so in an email, thereby "necessarily creating a public record" in which her identity was "plain and easily-identifiable," *Erpenbach*, 2014 WI App 49, ¶¶ 28, 30. Having rendered her email and identity public by her own voluntary and unsolicited conduct, Van Ert could not have reasonably expected that that information was still—or that it would remain—private.

As I wrote in my prior order, "the only justifiable inference that I can draw" from the facts as alleged in the complaint "is that defendants disclosed information of significant public interest in which Van Ert had no reasonable expectation of privacy." Decision and Order, ECF No. 14, at 8. I therefore reaffirm my conclusion that the

complaint's well-pleaded factual allegations, which I assume to be true, do not give rise to a plausible inference that defendants violated Van Ert's constitutional right to privacy.

Moreover, I note that, even if the complaint had plausibly alleged that defendants violated Van Ert's constitutional right to privacy, they would be entitled to qualified immunity because there is no "clearly established [constitutional] privacy right" in "information *voluntarily* disclosed . . . , even when it is subsequently passed on to a much wider audience than the one that initially received it." *See Chasensky v. Walker*, 740 F.3d 1088, 1096–97 (7th Cir. 2014) (discussing *Malleus v. George*, 641 F.3d 560 (3d Cir. 2011)). As such, given the complaint's factual allegations, defendants could not be found liable for civil damages for releasing Van Ert's email and name to the press, even if that conduct did violate her constitutional right to privacy.

Van Ert has not shown that I committed any error, manifest or otherwise, in dismissing her constitutional privacy claims. Thus, to the extent that she seeks reconsideration of my order dismissing those claims, I will deny her Rule 59(e) motion.

**2. First Amendment Retaliation Claims**

Van Ert next argues that I erroneously dismissed her First Amendment retaliation claims based on a finding that defendants did not intimidate or coerce her by releasing personal details about her to the public. To the contrary, I dismissed those claims because the facts as alleged in the complaint do not give rise to a plausible inference of unconstitutional retaliation. In other words, I properly applied controlling precedent in dismissing Van Ert's retaliation claims, so my prior order, at least to the extent that it addresses those claims, is not based on a manifest error of law, and I need not reconsider it. Nonetheless, I will reiterate my reasons for dismissing those claims.

To state a First Amendment retaliation claim, a plaintiff must allege that "she suffered a deprivation that would likely deter First Amendment activity." *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017). Yet, where, as here, "the core of the 'alleged retaliatory action is in itself speech,'" a public official's conduct "is generally actionable only in situations of 'threat, coercion, or intimidation that punishment, sanction, or adverse regulatory action w[ill] immediately follow.'" *Novoselsky v. Brown*, 822 F.3d 342, 356 (7th Cir. 2016) (alteration in original) (quoting *Hutchins v. Clarke*, 661 F.3d 947, 956–57 (7th Cir. 2011)). Assuming the truth of the complaint's factual allegations, defendants' alleged retaliatory action—releasing Van Ert's name and email to the press—does not "rise to the level of threat, coercion, [or] intimidation." *Id.* at 357.

A plaintiff can show that she suffered an actionable deprivation by alleging that "a public official . . . retaliated by subjecting [her] to 'embarrassment, humiliation, and emotional distress.' But this is a high bar, usually limited to the release of 'highly personal and extremely humiliating details' to the public." *Id.* at 356 (citations omitted) (quoting *Hutchins*, 661 F.3d at 957). For example, the plaintiff in *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998), stated a retaliation claim when she alleged that a sheriff held "a press conference to release the confidential and highly personal details of [her] rape by an unknown assailant," including "details of the acts perpetrated against her that were so embarrassing she had not even told her husband," after she "publically criticiz[ed] the sheriff's lack of diligence in investigating the crime." *Id.* at 676.

Here, the complaint does not plausibly allege that defendants released highly personal or extremely humiliating details about Van Ert to the public such that they subjected her to actionable embarrassment or humiliation. Indeed, I cannot even

10

discern from the complaint precisely what information Van Ert considered to be *private*, much less highly personal or extremely humiliating. The complaint alleges only that her "relationship was confidential," that her email "contained private and confidential information about [her]," and that her email was itself "confidential," Compl., *supra*, ¶¶ 14, 18, 26, but I need not accept the truth of "mere conclusory statements" like these. *Iqbal*, 556 U.S. at 678. Moreover, the complaint alleges that the relationship was "known to . . . a limited number of individuals," *id.* ¶ 14, and Van Ert's email says that "many of the people in his life were aware of [it] . . . , as [was] everyone in [her] life," Defs.' Ex. 1, ECF No. 9-1, at 1.[1] Thus, the complaint's allegations and the statements in Van Ert's email cut against an inference that even her relationship was actually private.

For these reasons, I reaffirm the conclusion in my prior order that the complaint's allegations do not give rise to a plausible inference of actionable retaliation. Therefore, to the extent that Van Ert moves under Rule 59(e) for reconsideration of my order dismissing her First Amendment retaliation claims, I will deny her motion.

**3. Class-of-One Equal Protection Claims**

Van Ert also argues that I dismissed her equal protection claims after inappropriately finding that defendants did not act spitefully or maliciously but in good faith, if mistakenly or incompetently. However, I applied the proper legal standard in dismissing these claims, too, so I need not reconsider my prior order to the extent that it addresses them. Again, though, I will restate my reasons for dismissing these claims.

---

[1] Van Ert does not dispute that I properly considered her email, which defendants attached to their motion to dismiss. "[I]n deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to [her] claim[s]." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (omission in original) (quoting *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).

Van Ert sought relief asserting that "[she] alone suffered the defendant's harassment." *Brunson v. Murray*, 843 F.3d 698, 707 (7th Cir. 2016). In other words, she brought "class-of-one" equal protection claims, which "are designed to prevent government actors from singling out a person for arbitrary abuse." *Id.* at 705. A complaint states a class-of-one claim where it alleges "that defendants treated other similarly situated persons better than they treated [the plaintiff]." *Id.* Where there are no such "comparators," a complaint must allege "a pattern of discriminatory behavior on the part of a government," or the complaint's factual allegations must "clearly suggest harassment by public officials that has no conceivable legitimate purpose." *Id.* at 707 (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 748 (7th Cir. 2012)).

Here, the complaint's allegations do not give rise to a plausible inference that defendants harassed Van Ert, much less that they had "no conceivable legitimate purpose" for acting as they did. To the contrary, the facts as alleged in the complaint clearly allow for the inference that they properly released Van Ert's name and email pursuant to lawful inquiries from the press and that they did so in good faith. Even assuming defendants erred as a matter of state law in releasing that information, the complaint alleges nothing more than "ordinary . . . mistakes by government officials," which do not constitute "actionable, deliberate discrimination." *Id.* at 747–48.

Thus, I reaffirm the conclusion in my prior order that the complaint does not plausibly allege that defendants singled out Van Ert for arbitrary abuse. To the extent that she moves under Rule 59(e) for reconsideration of my order dismissing her class-of-one equal protection claims, I will deny her motion.

## C. Manifest Injustice

Finally, Van Ert argues that I must reconsider my order to prevent manifest injustice. "As it stands," she says, my order "broadcasts to all victims that they have no reasonable expectation of privacy when they report allegations of abuse and mistreatment to university officials." Pl.'s Br., ECF No. 17, at 10. My order says no such thing. It simply says that Van Ert, specifically, filed a complaint in federal court that does not plead factual content sufficient to state a plausible claim to relief under federal law and, thus, that she cannot proceed here. That she considers that result unjust is an insufficient basis for reconsidering it. Accordingly, to the extent that she seeks reconsideration on that basis, I will deny her Rule 59(e) motion.

## III. CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that the plaintiff's motion for reconsideration of my order dismissing her federal claims (ECF No. 16) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 29th day of June, 2018.

                                     s/Lynn Adelman
                                      LYNN ADELMAN
                                      District Judge